Adelaide DeHOYOS, Individually and as Administratrix for the Estate of Frederick DeHoyos; Janet Hoffman, Individually and as Administratrix for the Estate of Gary Lee Hoffman; Rosemary Harris, as Administratrix for the Estate of Ben Harris, Plaintiffs,

v.

JOHN MOHR & SONS; Henry Pratt Company; Amsted Industries; American Chain Company, Inc.; Acco Industries, Inc., f/k/a American Chain and Cable Company, Inc.; Westinghouse Electric Corp., Defendants.

Shirley BLACK, Individually and as Administratrix of the Estate of Allen Black; Almeda Fields, Individually and as Administratrix of the Estate of Donald Fields, Plaintiffs,

v.

JOHN MOHR & SONS; Henry Pratt Company; Amsted Industries, Inc.; American Chain Company, Inc.; Acco Industries, Inc., f/k/a American Chain and Cable Company, Inc.; Westinghouse Electric Corp., Defendants.

Joyce Ann COLLINS, as Special Administratrix of the Estate of Ezell Goins, Deceased, Plaintiff,

v.

JOHN MOHR & SONS; Henry Pratt Company; American Chain Company, Inc.; Acco Industries, Inc., f/k/a American Chain and Cable Company, Inc.; Westinghouse Electric Corp.; Amsted Industries, Inc.; John Doe Companies, Defendants.

Evelyn L. GOINS, as Administratrix for the Estate of Ezell Goins, Plaintiff,

v.

JOHN MOHR & SONS; Henry Pratt Company; American Chain Company, Inc.; Acco Industries, Inc., f/k/a American Chain and Cable Company, Inc.; Westinghouse Electric Corp.; and Amsted Industries, Defendants.

Nos. H 81–669, H 81–672, H 81–684 and H 81–689.

United States District Court, N.D. Indiana, Hammond Division.

Nov. 2, 1984.

70

See also, 778 F.2d 1278.

Terrence M. Rubino, Hammond, Ind., for plaintiffs Adelaide DeHoyos, Janet Hoffman, Rosemary Harris and Evelyn L. Goins.

Stephen Cohen, Cecil B. Cohen, Thomas R. Bullard, Cohen, Cohen & Bullard, East Chicago, Ind., William Stevens, George C. Pontikes, Foss, Schuman & Drake, Ralph

M. Goren, Chicago, Ill., for plaintiffs Shirley Black and Almeda Fields.

Rhett L. Tauber, Theodoros, Anderson & Tauber, P.C., Merrillville, Ind., for plaintiff Joyce Ann Collins.

Frederick H. Link, David C. Jensen, Eichhorn, Eichhorn & Link, Hammond, Ind., for defendant John Mohr and Sons.

Jon Schmoll, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, Ind., for defendants Henry Pratt Co., and Amsted Industries.

Leon R. Kaminski, Martin W. Kus, Newby, Lewis, Kaminski & Jones, LaPorte, Ind., for defendants American Chain Co., Inc., and Acco Industries, Inc., f/k/a American Chain and Cable Co.

Eric L. Kirschner, James W. Roehrdanz, Frank J. Galvin, Jr., Galvin & Galvin, P.C., Hammond, Ind., for defendant Westinghouse Elec. Corp.

## MEMORANDUM DECISION AND OPINION

KANNE, District Judge.

In these four diversity cases, plaintiffs have brought suit against a general contractor and manufacturers alleging that defective equipment malfunctioned and caused the death by asphyxiation of the six plaintiffs' decedents at an Indiana steel mill. The cases have been consolidated for purposes of discovery and pretrial motions.

Presently before the court are: (1) defendants' motions for partial judgment on the pleadings on the issue of plaintiffs' right to recover for loss of consortium and punitive damages under Indiana's wrongful death statute, Ind.Code § 34-1-1-2; and, (2) defendants' motions for summary judgment on the issue of whether these actions are barred by the statute of limitations under Indiana's products liability statute, Ind.Code § 33-1-1.5-5. Briefly, the undisputed facts disclose the following.

Jones & Laughlin Steel Company ("J & L") operated a steel mill at East Chicago, Indiana. Employed by J & L at the East Chicago plant were all of plaintiffs' decedents: Frederick DeHoyos; Gary Lee Hoffman; Ben Harris; Allen Black; Donald Fields; and Ezell Goins.

As a part of the steel making process J & L utilized large blast furnaces at the East Chicago facility. Prior to the date of the accident the No. 3 blast furnace had been taken out of operation for the purpose of a "reline". The relining of the blast furnace required J & L steelworkers and others involved in the construction to be inside the furnace.

At approximately 10:10 P.M., on December 28, 1979, a fan located at the No. 3 blast furnace stopped running. As a result carbon monoxide and other deadly gases began to enter the blast furnace at the rate of 30,000 cubic feet per minute. When the fan malfunctioned the blast furnace "stove man" summoned the general turn foreman, Allen Black. Black, accompanied by Gary Lee Hoffman, the blower foreman, went to a manually operated backup valve at the blast furnace. Hoffman attempted to shut the backup valve and stop the flow of poisonous gases into the blast furnace. The attempt by Hoffman to shut the valve failed. When he pulled the chain which activated the overhead shutoff valve, the chain came off the chainwheel and wrapped around the wheel shaft. The backup valve was thus made inoperable.

As a result of the failure to prevent the continued flow of carbon monoxide and other gases into the blast furnace area Gary Lee Hoffman was overcome by the fumes, collapsed and died. Allen Black attempted to rescue Hoffman and he likewise collapsed and died. Subsequent rescue efforts by fellow employees Donald Fields, Ezell Goins, Ben Harris and Frederick DeHoyos met with the same result—each died upon entering the blast furnace area. All of the plaintiffs' decedents were diagnosed as having expired within seconds due to

asphyxiation from an extremely high level of carbon monoxide and other gases at the site of the No. 3 blast furnace.

John Mohr & Sons ("Mohr") was the general contractor for the blast furnace reline. Westinghouse Electric Corporation ("Westinghouse") manufactured the "No. 32 stove combustion fan" which malfunctioned. The manually operated "48 inch model R1 rubber seated butterfly valve" was designed, manufactured and assembled by Henry Pratt Company, a division of Amsted Industries ("Pratt and Amsted"). The chain mechanism which was to activate the shutoff valve was manufactured by American Chain Company, Inc., and Acco Industries, Inc., formerly known as American Chain & Cable Company, Inc., ("American Chain and Acco"). All of the foregoing companies have been named as defendants.

One hundred thirty-six (136) counts based on numerous theories have been brought on behalf of the decedents by personal representatives and by survivors on their own behalf. A summary of the plaintiffs' counts is set forth in Appendix A.

## I. MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS.

Defendant Mohr has moved for partial judgment on the pleadings pursuant to FED.R.CIV.P. (12)(c) [1] on the basis that Indiana statutes and case law preclude recovery for loss of consortium and punitive damages under the particular circumstances as alleged in the plaintiffs' complaints.[2] Since the pleadings have been closed and the parties have had ample opportunity to present pertinent material which has not been excluded, the court will treat the motion for partial judgment on the pleadings as one for partial summary judgment under FED.R.CIV.P. 56.

The Indiana wrongful death statute imposes liability on any person whose wrongful conduct causes death of another person. Ind.Code § 34–1–1–2.[3] The case law pro-

---

**1.** FED.R.CIV.P. 12(c):

(c) *Motion for Judgment on the Pleadings.* After the pleadings are closed but with such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all materials made pertinent to such a motion by Rule 56.

**2.** Defendant Pratt and Amsted also moved for partial judgment on the pleadings raising the same issues; however, because of the court's decision with regard to the motion for summary judgment on all issues regarding Pratt and Amsted they are not included in this discussion and disposition.

**3.** Ind.Code § 34–1–1–2 provides, in its entirety: *Action for wrongful death.*—When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of

the decedent within two [2] years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estate for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this act, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages inure to the exclusive benefit of the person or persons furnishing necessary and reasonable hospitalization or hospital services in connection with the last illness or injury of the decedent, performing necessary and reasonable medical or surgical services in connection with the last illness or injury of the decedent, to the undertaker for the necessary and reasonable funeral and burial expenses, and to the personal representative, as such, for the necessary and reasonable costs and expenses of administering the estate and pros-

vides that the statute was designed "not to compensate for injuries to the decedent, but rather to create a cause of action to provide a means by which the decedent's survivors may be compensated for the loss they have suffered by reason of the death." *Fisk v. United States*, 657 F.2d 167, 170 (7th Cir.1981). *Accord, e.g., In Re Estate of Pickens*, 255 Ind. 119, 263 N.E.2d 151 (1970). The issues of whether consortium and punitive damages are recoverable in wrongful death actions must be examined within the context of Indiana Code § 34-1-1-2, and cases interpreting that statute.

### A. *Recovery for loss of consortium under Indiana Code § 34-1-1-2.*

■ The plaintiffs in this wrongful death action seek damages for loss of consortium. In appropriate wrongful death actions loss of consortium is a valid element of damages. The defendant, however, correctly distinguishes the present case to illustrate the reasons why, in this case, damages due to loss of consortium are not recoverable.

It has been well settled in Indiana that, where the same wrongful act which causes a loss of consortium also causes the death of the spouse, the period of time for which recovery for loss of consortium may be had is limited to the time between the commission of the injury and the date of the death of the injured spouse. *Bemis Co., Inc. v. Rubush*, 401 N.E.2d 48, 63 (Ind.App.1980), *rev'd on other grounds*, 427 N.E.2d 1058 (Ind.1981); *Burk v. Anderson*, 232 Ind. 77, 109 N.E.2d 407 (1952); *Long v. Morrison*, 14 Ind. 595 (1860). *See also Heuer v. Loop*, 198 F.Supp. 546 (S.D.Ind.1961). In *Bemis*, the Indiana Court of Appeals stated:

> This [period of time for recovery] necessarily implies that the defendant cannot

be assessed damages for causing the survivor spouse's widowerhood or widowhood during which the surviving spouse would, without question, be without those benefits from the late spouse covered by the rubric 'consortium.' *Bemis* argues that, as with death, dissolution of the marriage marks the end of the compensable period for loss of consortium. We agree.

401 N.E.2d at 63.

Since consortium damages are based on losses suffered *during* the period of marriage, damages for loss of consortium are inappropriate when the death of a spouse is instantaneous. The *Bemis* analysis is therefore applicable here and the instantaneous deaths of the decedents preclude recovery for loss of consortium damages to the surviving spouses.

However, such an exclusion of damages for "consortium" does not necessarily exclude all "intangibles" such as lost love, affection, and guidance provided by a parent to children. While the loose terminology and some misuse of the term "consortium" makes the point arguable, Indiana law does not include such "intangibles" under the singular category of consortium. In *State v. Bouras*, 423 N.E.2d 741, 746 (Ind.App.1981), the Indiana Court of Appeals stated that, pursuant to Ind.Code § 34-1-1-2, the jury is considered properly instructed on recoverable intangibles, excluding consortium, when it is informed that damages for intangibles such as loss of parents' services, counseling, love, guidance and affection can be awarded to a surviving minor son where his mother died in an automobile accident and his father died a few days later from injuries suffered in the crash.

In the case of *Huff v. White Motor Corp.*, 609 F.2d 286, 297 (7th Cir.1979), the Court of Appeals for the Seventh Circuit in

---

ecuting or compromising the action, including a reasonable attorney's fees, and in case of a death under such circumstances, and when such decedent leaves no such widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of

damages to be recovered shall be the total of the necessary and reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees.

interpreting Indiana's wrongful death statute stated:

> [W]e believe the legislature used the phrase 'including, but not limited to' to make clear that by including the list of recoverable expenses that follows, it did not intend to exclude the other factors a jury may consider in assessing *compensatory* damages, *e.g.*, loss of care, love, affection and training and guidance for children. *See American Car Loading Corp. v. Gary Trust & Savings Bank*, 216 Ind. 649, 660 (25 N.E.2d 777, 782 (1940) (emphasis in original).

In summary, while recovery for lost care, love, affection, training and guidance of the children, might be appropriate under the facts of this case, recovery for loss of consortium for a surviving spouse is inappropriate here as death was instantaneous.

Plaintiffs' separate counts for loss of intangibles are not cognizable because these matters are proper elements of damages in other alleged causes of action.

In addition to damages for loss of consortium sought by the personal representatives of their respective estates, certain plaintiffs [4] who were the wives of their decedents are also bringing separate causes of actions as individuals, for loss of consortium. Indiana law does recognize that surviving spouses can bring an action individually and independently from the personal representative of the estate for loss of consortium. *Rosander v. Copko Steel*, 429 N.E.2d 990 (Ind.App.1982). Again, however, since this case involves instantaneous death, recovery for loss of consortium, as that term has been narrowly interpreted, is precluded and a spouse's individual claim for loss of consortium must likewise fail.

The court, therefore, finds that the motion for partial judgment on the pleadings

filed by defendant Mohr, which the court will treat as a motion for partial summary judgment, should be granted, as to Counts 4, 5, 10, 11, 16 and 17 under Cause No. H 81–669 (DeHoyos) and, as to those counts of that complaint, judgment should be entered in favor of the defendant Mohr and against the plaintiffs. The court further finds, that as to any request for "consortium" in other complaints, judgment on that issue in those complaints should be entered in favor of the defendant Mohr and against the plaintiffs.

### B. *Recovery of Punitive Damages Under Indiana Code § 34–1–1–2.*

■ The plaintiffs in this wrongful death action also seek punitive damages. The essential question is whether plaintiffs may recover punitive damages under the wrongful death statute, Ind.Code § 34–1–1–2.

Punitive damages may be allowed in tort or in contract, where, "the public interest will be served by the deterrent effect punitive damages will have upon future conduct of the wrongdoer and parties similarly situated ..." and where "the elements of fraud, malice, gross negligence or oppression mingle in the controversy." *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448 at 454 (Ind.App.1980).

According to Ind.Code § 34–1–1–2 an action may be brought by a personal representative of the decedent.whenever the decedent "might have maintained an action had he or she, as the case may be, lived." If the decedent had lived, the general rule under Indiana negligence law provides that punitive damages are recoverable when willful or wanton misconduct can be shown. Plaintiffs submit that this court should enforce the plain meaning of the wrongful death statute and allow plaintiff to recover punitive damages.

---

**4.** Although all plaintiffs sued as personal representatives as provided under Ind.Code § 34–1–1–2 (1982), four plaintiffs have also sued individually as former wives of their respective decedents. They include Adelaide DeHoyos and Janet Hoffman under Cause No. H 81–669, and Shirley Black and Almeda Fields under Cause No. H 81–672.

However, it has been expressly held that the purpose of Indiana's wrongful death statute is to *compensate* the beneficiaries for loss occasioned by the decedent's death. *In Re Estate of Pickens*, 255 Ind. 119, 263 N.E.2d 151, 155 (1970); *Bocek v. Inter-Insurance Exchange of the Chicago Motor Club*, 175 Ind.App. 69, 369 N.E.2d 1093, 1096 (1977); *New York Central R.R. Co. v. Clark*, 136 Ind.App. 57, 197 N.E.2d 646, 651 (1964).

Nevertheless, plaintiffs submit that the Indiana legislature authorized awards of punitive damages in wrongful death actions by amending Ind.Code § 34–1–1–2 to read in relevant part as follows:

> When the death of one is caused by the wrongful act or omission of another ... the damages shall be in such an amount as may be determined by the court or jury, *including but not limited to,* reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission [emphasis added].

1965 Indiana Acts, Ch. 174 § 1.[5]

Again, in *Huff v. White Motor Corporation*, 609 F.2d 286, 297 (7th Cir.1979), the Court of Appeals for the Seventh Circuit further stated:

> No Indiana court decisions have determined whether this amendment authorizes punitive damages. As plaintiff acknowledges, prior to the amendment punitive damages were not recoverable because the sole purpose of the statute was to compensate wrongful death claimants for pecuniary losses occasioned by wrongful death. *See, e.g., Lindley v. Sink*, 218 Ind. 1, 14–15, 30 N.E.2d 456, 461 (1940).
>
> 'Punitive damages "are not compensation for injury. Instead they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." ' [Citations omitted]. An authorization of punitive damages would

constitute a major change in both the effect and the purpose of Section 34–1–1–2. We cannot accept the arguments that the Indiana legislature would so obliquely adopt such a significant change. Rather, we believe the legislature used the phrase 'including, but not limited to' to make clear that, by including a list of recoverable expenses that follows, it did not intend to exclude the other factors a jury may consider in assessing compensatory damages. *E.g.,* loss of care, love, and affection, and training and guidance for children. [Citations omitted]. *We conclude that Section 34–1–1–2 still does not authorize punitive damages* [Emphasis added].

609 F.2d at 297. The Seventh Circuit also determined that Indiana's wrongful death statute does not violate the equal protection clause of the United States and Indiana Constitutions by discriminating against wrongful death claimants and in favor of other personal injuries and property damage plaintiffs, who are permitted to recover punitive damages. In a later decision the Seventh Circuit Court of Appeals re-examined and reaffirmed its determination of the equal protection challenge in *In re Aircrash Disaster Near Chicago, Illinois*, 644 F.2d 594, 709 (7th Cir.1981).

Subsequent to the *Huff* decision, which stated that there were no Indiana court decisions determining whether Indiana's wrongful death statute authorizes punitive damages, the Indiana Court of Appeals in *State v. Bouras*, 423 N.E.2d 741 (Ind.App. 1981), reaffirmed the compensatory nature of the statute indicating that its purpose is to allow recovery for pecuniary losses suffered by the decedent's dependent next of kin. There the court in *Bouras* stated:

> The legislature used the phrase 'including but not limited to' to make it clear it did not intend to exclude other factors the jury may consider in assessing *compensatory damages, e.g.,* loss of care, love and affection in training and guidance of the children. *Huff v. White Mo-*

---

tor Corp., (7th Cir.1979) 609 F.2d 286, 297; Richmond Gas Corp. v. Reeves, (1973) 158 Ind.App. 338, 302 N.E.2d 795 [Emphasis added].

In Thomas v. Eads, 400 N.E.2d 778 (Ind. App.1980), also decided subsequent to Huff v. White Motor Corp., supra, the Indiana Court of Appeals expressly reaffirmed that the purpose of the Indiana wrongful death statute is to provide compensation for pecuniary loss to the survivors. Moreover, the Indiana court clearly stated that punishment of a party who causes a wrongful death is not the purpose of the wrongful death statute. The court stated:

The clear policy in Indiana as expressed in the decisions and statute is that recovery of damages in wrongful death actions is only for the purpose of compensating for the pecuniary loss of surviving spouse or dependent caused by the death of the decedents and to reimburse death creditor beneficiaries. Nathan was the only dependent of Debra, and Nathan is dead. There is no other statutory beneficiary who is entitled to receive the benefit of Debra's lost earnings. According to the Wrongful Death Statute only a dependent was entitled to lost earnings. If appellee were allowed to recover those damages which are intended to benefit dependents, those damages would be paid to persons not contemplated by the Wrongful Death Statute, summary judgment, contrary to the intent of the legislature. Therefore, policy dictates that the claim for those damages ends with the death of the dependent prior to judgment. The purpose of the Wrongful Death Statute is to provide for dependents, not to punish someone who causes a wrongful death. To allow damages which would not go to a dependent who has suffered pecuniary loss from the death of decedent would not serve the purpose of the statute but would serve only to punish the appellant [Emphasis added].

400 N.E.2d at 783.

Notwithstanding the plausible argument made by plaintiffs this court, sitting in diversity, is bound by the interpretations and strict application of Indiana's wrongful death statute. Upon review of the case law relating to the statute, the court is compelled to find that Ind.Code § 34–1–1–2 has been clearly interpreted as not authorizing recovery of punitive damages.

The motion of defendant Mohr for partial summary judgment on the counts of willful and wanton misconduct praying for punitive damages should be granted and judgment should be entered in favor of the defendant Mohr and against the plaintiffs on that issue.

## II. MOTIONS FOR SUMMARY JUDGMENT.

In general, plaintiffs allege defects in the design manufacture, assembly and installation of the gas shutoff valve system, the chain mechanism which activated the shutoff valve and the motor on the blast furnace stove fan.

However, regardless of the possible merits of plaintiffs' claims this court is required to initially determine whether plaintiffs' claims fall within the applicable statutes of limitation.

Defendants Pratt and Amsted, American Chain and Acco, and Westinghouse have moved for summary judgment on the basis that Indiana statutes and case law preclude recovery as these actions are barred by the statute of limitations as set forth in Ind. Code § 33–1–1.5–5, because the products in question were sold to J & L more than 10 years before the accident.

It is undisputed that the proximate cause of this accident can be traced to two occurrences. The first was the malfunction of the stove combustion fan causing carbon monoxide and other poisonous gases to enter into the blast furnace area. The second was the failure of the manually operated backup valve to function because the chain came off the chainwheel rendering the shutoff valve inoperable. In their combined response to Pratt and Amsted's motion for summary judgment plaintiffs essentially agree with the recitation of facts as set forth by Pratt and Amsted regarding

the accident. The facts have previously been summarized at the beginning of this opinion but for the sake of clarity must be expanded here as to each defendant.

### A. *Pratt and Amsted.*

Generally, each of the plaintiffs allege that the defendant, Pratt, is strictly liable to the plaintiffs because the gas shutoff valve was designed, manufactured, sold, installed and maintained by Pratt in an allegedly defective and unreasonable condition. Plaintiffs further allege that Pratt was negligent in the design, manufacture, installation, sale and maintenance of the valve. Further, the plaintiffs allege a cause of action against Pratt based on breach of express and implied warranty in that the gas shutoff valve was not of merchantable quality and was not fit for a particular purpose of regulating the gas flow to the blast furnaces. The plaintiffs allege similar theories against Amsted as well.

At the time of the sale of the valve, Pratt was an independent corporation but has since become a division of Amsted. The gas shutoff valve in controversy, including the entire operating mechanism of the chain, chainwheel, the chain guide, and the gearing was designed by Pratt and Amsted, manufactured by Pratt and Amsted (valve mechanism) and Acco and American Chain (chain mechanism), assembled by Pratt and Amsted and sold by Pratt and Amsted to Youngstown Sheet & Tube Company, predecessor of J & L Steel, around October of 1967, at the time of the fourth reline of the No. 3 blast furnace at J & L's East Chicago, Indiana, plant. The gas shutoff valves delivered by Pratt and Amsted to J & L in 1967 conformed to the design for such valves that had been developed and certified by Pratt. The valves were, in fact, installed by J & L during the fourth reline in 1967. Pratt itself had no involvement in the design of the No. 3 blast furnace at J & L.

After the initial sale of the valves in 1967, Pratt and Amsted performed no repair or maintenance work on those three gas shutoff valves. Pratt and Amsted's only involvement after 1967 was limited to furnishing J & L replacement parts for the valves in the years 1972, 1973 and 1978. The replacement parts furnished in the year 1972 consisted of three seats, six bearings and three sets of packing. In 1973, three more seats were furnished. In 1978, one seat retaining segment was furnished.

To understand the significance of the replacement parts in the functioning mechanism of the valve assembly, it is necessary to examine exactly how the butterfly valve assembly operates. Attached to this opinion are two blueprints which view the mechanism from the top while the valve is open (Appendix B) and view the chain and chainwheel mechanism (Appendix C). These views depict the functional parts of the valve assembly furnished to J & L in 1967.

As described in the pleadings, the valve portion of the valve assembly is a metal cylinder. A flat metal disc fits inside the metal cylinder. When the circumference of the flat metal disc is horizontal to the flow and against the circumference of the cylinder, the valve is in the fully closed position. When the circumference of the flat metal disc is vertical to the flow and to the circumference of the cylinder, the valve is in the fully open position (See Appendix B.) The valve disc, also referred to as the valve plate or valve butterfly, is moved from an open position to a closed position by turning the chainwheel which is a component of the operator. The forces applied to the chainwheel are transmitted to the gearing in the operator which transfers the force to the valve shaft and then to the valve disc (See Appendix C).

The deposition of the general foreman of auxiliaries, Joseph Hudnal, was taken. On the evening following the death of the plaintiffs' decedents Hudnal examined the gas shutoff valve involved here. He noted that the chain was off the chainwheel mechanism of the gas shutoff valve and that the chain was wrapped one turn around the shaft of the chainwheel. After he untangled the chain and put the chain

back on the chainwheel, the valve was mechanically operable in that the valve opened and closed without any difficulty when the chainwheel was turned. Hudnal found nothing mechanically wrong with the valve based upon his examination of the valve at that time. When the chainwheel was turned to put the valve in the closed position, the valve was in fact closed and properly seated. Hudnal concluded that subsequent to retracking the chain the valve was mechanically operable. (Deposition of Joseph Hudnal, January 6, 1983, pp. 33 and 239).

According to the plaintiffs' account of the facts, during the gas leak the steelworkers could not close the gas shutoff valve because when they pulled the chain on the valve, the chain came off the chainwheel and became wrapped around the shaft. (Plaintiffs' response to defendant Henry Pratt's motion for summary judgment citing deposition of Joseph Hudnal taken January 6, 1983, pp. 33 and 239).

The valve assemblies, as furnished in 1967, each contained a chain mechanism, manufactured by American Chain and/or Acco and installed as a component part of the overall unit, a valve, gearing and a valve plate position indicator.

Pratt and Amsted contend that the plaintiffs' causes of action against them are barred by the applicable statute of limitations contained in the Indiana Products Liability Act and in the Indiana Uniform Commercial Code since the valve assemblies were designed, manufactured and sold to J & L in the year 1967—in excess of the 10 years from the date of the decedents' death, December 28, 1979.

Ind.Code § 33–1–1.5–5 states:

*Statute of Limitations.* This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, any product liability action in which the theory of liability is negligence or strict liability in tort must be commenced within two (2) years after the cause of action accrues or within ten (10)

years after the delivery of the product to the initial user or consumer; except that, if the cause of action accrues more than eight (8) years but not more than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

In *Dague v. Piper Aircraft Corp.*, 513 F.Supp. 19 (N.D.Ind.1980), *aff'd*, 654 F.2d 727 (7th Cir.1981), Judge Allen Sharp of this court, in construing and upholding the constitutionality of the limitations of actions provisions of the Indiana products liability statute, granted summary judgment in favor of the defendant Piper on the grounds that the action had been filed more than 10 years after delivery of the product of Piper in 1965.[6] The Court of Appeals for the Seventh Circuit, in reviewing Judge Sharp's opinion in *Dague*, certified questions regarding the applicability and constitutionality of Indiana's Products Liability Act to the Indiana Supreme Court. The Indiana Supreme Court, in *Dague v. Piper Aircraft Corp.*, 418 N.E.2d 207 (Ind. 1981), likewise held that the limitations of an action provision of the Indiana Products Liability Act barred the plaintiff's action since the plaintiff's damages were incurred more than 10 years after the airplane was first placed in commerce. The Indiana Supreme Court stated:

Plaintiff correctly argues that the interpretation of the statute we now adopt, in effect, changes the disjunctive term 'or,' which, of course, appears in the statute, to the conjunctive 'and.'

418 N.E.2d at 211.

Simply stated, plaintiffs' claim must be brought within 10 years of the delivery of the product to initial user or consumer (the statute of repose); *and,* the claim must be brought within two years from the accrual of the injury (the statute of limitations). Thus, the last day for *commencement* of an action would be two years from the last day of the 10-year period.

---

**6.** The Seventh Circuit Court of Appeals recently reaffirmed the constitutionality of Ind.Code § 33–1–1.5–5 in *Braswell v. Flintkote Mines Ltd.*, 723 F.2d 527, 529 (7th Cir.1983).

Joseph Hudnal's undisputed eyewitness account discloses that the replacement parts furnished in the years 1972, 1973 and 1978, had nothing to do with the defective operation of the chain, the chainwheel, the chainwheel shaft, the chainwheel guard, the valve indicator plate or the valve operator. The replacement parts namely bearings, seats, packing and glue to secure a proper seal all pertain to the valve mechanism itself and are distinct and separate from the chainwheel mechanism. These replacement parts, in design, manufacture and installation, had no bearing on the accident. As plaintiffs concede, the cause of this accident relates to the chain coming off the chainwheel or questions concerning the integrity of the chain mechanism itself. The integrity of the valve mechanism is not questioned.

■ There is no question of the material facts which disclose that the valve mechanism, which is distinct and separate from the chain mechanism, was completely operable; and, any replacement parts used in refurbishing the valve mechanism were irrelevant to the functioning aspects of the chain mechanism. Therefore, replacement parts supplied by Pratt and Amsted within 10 years of the accident cannot extend or toll the statute of repose of Ind.Code § 33-1-1.5-5 where the replacement parts, play no part in the proximate cause of the accident. *See Great Lakes Co. v. Merrill A. Jones*, 412 N.E.2d 257, 260 (Ind.App. 1980).

Thus, there remains no genuine issue of material fact before the court regarding the involvement of Pratt and Amsted with the butterfly valve assemblies after their sale to J & L in the year 1967.

■ The plaintiffs advance an additional argument that Indiana's Product Liability Act does not bar their action based upon an alleged failure to warn because the legislature had not made specific mention of such an action in drafting a limitation provision under Section 5 of the statute. Plaintiffs' argument is similar to the argument advanced to the Indiana Supreme Court in *Dague v. Piper Aircraft Corp., supra,* there the court stated:

Plaintiff Dague next argues that, even if it should be found that section five bars her claim relating to the defendant's acts enumerated in the statute, that portion of her complaint alleging a failure to warn of the product's dangerous nature would not so be barred. Dague contends that Piper Aircraft has a continuing duty to warn users of those dangerous features of its products of which it had knowledge, and that this duty—and the defendant's negligent failure to perform it—allegedly occurred within the statutory period. Thus, she claims, Piper Aircraft's alleged negligence began during the 10-year time limit and was continuing, and that the statute of limitations does not bar an action grounded on this theory. We hold, however, that section five likewise bars plaintiff's cause of action based on a negligent failure to warn the user of the aircraft's alleged defect.

. . . .

Section two of the Act (Burns' Ed. § 34-4-20(A-2) defines the key terms used in the Act. Thus, a "product liability action" includes: "All actions brought for or on account of personal injury, disability, disease, death or property damage caused by or resulting from, the manufacture, construction or design of any product." Plaintiff asserts that the duty to warn is a general one and is in no way peculiar to the law of products liability. Therefore, her argument runs, because the legislature did not specifically refer to claims resulting from the alleged failure of the manufacturer or seller to warn a potential customer or user of its products' latently defective nature, then it must be presumed that the legislature did not intend this Act to apply to such an action.

We are not persuaded by this argument. First, if the legislature had intended to assert this exclusion in the Act, it could easily have done so.... Second, it seems clear that the legislature intended that the Act govern all product liability

actions, whether the theory of liability is negligence or strict liability in tort. 418 N.E.2d at 211–212.

The decision by the Indiana Supreme Court in *Dague* is dispositive of the failure to warn issue raised by the plaintiffs in this case.

Finally, plaintiffs contend that in any event, the statute of repose is inapplicable to this cause of action since the 1983 amendments to Ind.Code § 33–1–1.5–1,[7] specifically includes "bystander" in the definition of a user or consumer. Plaintiffs assert that the decedents were bystanders and that bystanders were not included in the statutory definition at the time of the plaintiffs' cause of action accrued in 1979. Defendants Pratt and Amsted counter by stating that the legislature's inclusion of the specific reference to bystanders in the 1983 version of the Act can be seen as a formal expression of intent all along to include bystanders within the statute. Defendants Pratt and Amsted cite the cases of *Gilbert v. Stone City Construction Co., Inc.,* 171 Ind.App. 418, 357 N.E.2d 738 (1976), and *Chrysler Corporation v. Alumbaugh,* 168 Ind.App. 363, 342 N.E.2d 908 (1976). The Indiana Court of Appeals has held:

> In Indiana, bystanders 'whom the ... supplier should reasonably foresee as being subject to the harm caused by the defect' may recover under Section 402(A) for injuries caused by a defective product.

*Gilbert v. Stone City Construction Co., Inc., supra,* 357 N.E.2d at 742 (*citing Chrysler, supra,* 342 N.E.2d at 917).

■ This court finds that the foregoing cases disclose that bystanders, who were reasonably foreseeable as being subject to the harm caused by a defect in the product, were intended, even before the 1983 amendment, to be included under Indiana's products liability statute. Therefore the plaintiffs' contention with regard to the effect of the 1983 amendment to Indiana's products liability statute is unpersuasive.

Since the chainwheel component of the gas shutoff valve assembly was sold and delivered to J & L more than 10 years prior to the incident which resulted in the deaths of the plaintiffs' decedents, the court finds that plaintiffs' action based on negligence or strict liability in tort under Indiana's products liability statute Ind.Code § 33–1–1.5–5 are time barred by the 10-year statute of repose.

The plaintiffs' remaining theories of action against the defendants Pratt and Amsted assert theories of breach of express and implied warranty. *See* Ind.Code § 26–1–2–313 through 315, inclusive. A single factor will prevent recovery on these theories. Privity of contract did not exist between the plaintiffs' decedents and the defendant manufacturers. Indiana law requires privity for breach of warranty actions based on contract. *Lane v. Barringer,* 407 N.E.2d 1173, 1175 (Ind.App.1980). This dilemma was a major force behind the creation of the theory of products liability statutes. The products liability statute, or products liability theory is a means to sue in absence of privity.

If, on the other hand, the plaintiffs are alleging a tortious breach of contract, that allegation is identical to plaintiffs' alleged cause of action sounding in strict liability in tort and is governed by the products liability statute. *See Neofes v. Robertshaw Controls,* 409 F.Supp. 1376, 1379 (S.D.Ind. 1976); *Withers v. Sterling Drugs,* 319 F.Supp. 878, 883 (S.D.Ind.1970).

The court finds that defendants Pratt and Amsted's motion for summary judgment pursuant to Rule 56 is well taken for the reasons set forth above and therefore summary judgment should be entered in

---

7. Ind.Code § 33–1–1.5–2 provides:

As used in this chapter:

"User or consumer" means a purchaser, any individual who uses or consumes the produce, or any other person who, while acting for or on behalf of the injured party, was in posses-sion and control of the product in question, or any bystander injured by the product who would reasonably be expected to be in the vicinity of the product during its reasonably expected use....

favor of Pratt and Amsted and against the plaintiffs.

### B. *Westinghouse.*

Plaintiffs indicate that Westinghouse designed, manufactured, installed, sold and maintained the motor on the blast furnace stove fan which malfunctioned on the date in question. Plaintiffs allege, *inter alia,* inadequate design and manufacture, no adequate warnings or instructions, improper testing prior to installation, unreasonably dangerous, negligence in the design, manufacture, installation, upkeep of the Westinghouse motor and they further indicate that defendant Westinghouse had a duty "at all relevant times", and a breach of such duty toward the decedents caused their death.

Defendant Westinghouse in its motion for summary judgment states that Westinghouse delivered the fan motor to J & L Steel in August of 1963, (Exhibit 171, Interrogatory No. 91). Westinghouse asserts that since the incident occurred in December of 1979, 16 years after the initial delivery to J & L, plaintiffs' cause of action is barred by the statute of repose in Ind.Code § 33–1–1.5–5. Defendant cites *Dague, supra,* in support of its motion. Regardless of whether Westinghouse knew of any defect, they owed no duty to plaintiffs after August 1973, which was 10 years after the motor was installed by Westinghouse.

Westinghouse, in answer to interrogatories filed on March 8, 1984, state that they had no contract to maintain, test or inspect the fan motors in question.

Plaintiffs, in a combined response to defendant Westinghouse's motion for summary judgment raised three issues. The first issue is whether the Products Liability Act applies to bystanders prior to the inclusion of the specific word "bystander" in 1983 into the Products Liability Act. This matter was previously addressed under Pratt and Amsted's discussion and is dispositive of the issue here.

The second issue the plaintiffs raise is whether the products liability statute of limitations applies retroactively to bar actions involving products put into the stream of commerce and use before enactment of the statute. Plaintiffs argue that it is well established that statutes are to be construed as having prospective operation unless the language clearly indicates that they were intended to be retrospective. The products liability statute of limitations does not have language clearly indicating that it is to be applied retroactively to products entering the stream of commerce prior to the statute's enactment. Therefore the plaintiffs argue that the statute of limitations provisions of the Products Liability Act are prospective in operation and only apply to products that entered the stream of commerce after June 1, 1978, the effective enactment date of Indiana's products liability statute.

Westinghouse has not responded to this specific issue. Pratt and Amsted have responded and the court will deal with this issue, and its application to all defendants, since all of these cases have been consolidated for purposes of pretrial motions.

■ The general rule in Indiana is that the statute of limitations in effect as of the time of filing a suit governs. *Matter of M.D.H.,* 437 N.E.2d 119 (Ind.App.1982); *Walsh v. Halteman,* 403 N.E.2d 894 (Ind. App.1980). However, the application of the 10-year statute of repose provision does not have a retroactive effect in the instant case. As of the effective date of the Products Liability Act (June 1, 1978), no cause of action had accrued. The decedents' deaths occurred in December 1979, one and one-half years following the effective date of the Act.

Recently the Court of Appeals for the Seventh Circuit in *Pitts v. Unarco Industries, Inc.,* 712 F.2d 276, 279, (7th Cir.1983), stated:

Plaintiff's cause of action had not yet accrued when the Indiana legislature adopted the ten-year statute of limitations contained in the Products Liability Act. Her right to sue for her husband's wrongful death vested when her husband died, *Fisk v. United States,* 657 F.2d 167

(7th Cir.1981); *Dague v. Piper Aircraft Corp.*, [CCH Products Liability Reports, ¶ 8941], 418 N.E.2d 201 (Ind.1981), and he died some two years after the Products Liability Act was passed. The change in the law therefore caused her no loss of property.

Plaintiffs' assertion that the products liability statute of limitations does not apply to products put into the stream of commerce before its enactment fails.

■ In plaintiffs' supplemental response to Westinghouse's motion for summary judgment plaintiffs state that they have recently learned, "upon information and belief," that Westinghouse on and prior to the date on which plaintiffs' decedents were asphyxiated may have had contracts to maintain, test and inspect fan motors at J & L, including the motor in question. This assertion is insufficient to create a genuine issue of material fact. (See discussion under federal procedure section following.)

In sum, the court finds that Westinghouse's motion for summary judgment is well taken and should be granted.

### C. *American Chain and Acco.*

Plaintiffs assert that American Chain and Acco are engaged in the business of designing, manufacturing, installing, maintaining and selling chains and chain mechanisms. They further allege that these defendants inadequately designed and manufactured the mechanism which resulted in an improper gas flow from blast furnace No. 3 at J & L which ultimately caused the deaths of the decedent. Plaintiffs further allege, *inter alia,* inadequate warning signs, improper inspection, improper testing prior to installation, unreasonably dangerous and not fit for its intended foreseeable use, and that such breach of a duty caused the death by asphyxiation of the decedents.

Defendants Acco and American Chain acknowledge that the wheel in question was manufactured by the defendant American Chain Company, Inc., also known as Acco. It was the original piece of equipment which was installed in 1967, more than 10 years before the accident which occurred in 1979.

Additionally, defendants Acco and American Chain assert that the chain involved in this matter was not manufactured by American Chain Company or Acco Industries.[8]

There has been no response filed by any of the plaintiffs to American Chain and Acco's motion for summary judgment.

As previously stated, these matters have been consolidated for purposes of determination of pretrial motions. The affirmative defense of statute of limitations applied here as well and the court finds that plaintiffs' causes of action based on strict liability in tort, negligence, and breach of express and implied warranty are barred as previously discussed. The court thus finds that defendants, American Chain and Acco's, motion for summary judgment is well taken and should be granted.

### D. *Application of Federal Rules of Civil Procedure.*

Summary judgment is appropriate when the pleadings and supporting papers demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled judgment as a matter of

---

**8.** An expert, P.E. Beebe, states, by affidavit, that he has not had the opportunity to examine the actual chain that is the subject matter of this litigation inasmuch as the chain is missing and could not be produced for inspection. The expert examined photographs submitted to him of the accident scene including photographs of the chain and wheel involved. The photographs were used by the coroner's office and were part of the grand jury investigation into the accident. Upon review of the photographs, the expert asserts that the manufacturer or source of the chain is unknown but the chain was not manufactured by American Chain or Acco because of the inconsistencies with wheel sprocket to chain link length ratios of chain manufactured by American Chain and Acco. Defendants American Chain and Acco, by reason of these facts assert that this action is improperly filed against the defendants as they can owe no duty to the plaintiffs herein.

law. FED.R.CIV.P. 56(c); *Trulson v. Trane Co.*, 738 F.2d 770, 771 (7th Cir.1984). In deciding whether there is a genuine issue of material fact the underlying facts and their reasonable inferences must be viewed in a light most favorable to the nonmoving party. *Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941, 943 (7th Cir. 1984).

Recently, the Seventh Circuit has stated that:

To create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial.... A party may not rest on mere allegations or denial of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue.

*Korf v. Ball State University*, 726 F.2d 1222, 1226 (7th Cir.1984), (*citing Posey v. Skyline Corp.*, 702 F.2d 102, 104 (7th Cir. 1983)).

Applying these standards to this case the court has, as indicated, found no genuine issue as to any material fact, the matters of law have been determined and summary judgment has been found appropriate.

In conclusion, it is painfully apparent that Indiana law has worked a very harsh result with regard to the named plaintiffs and decedents' next of kin. However, federal courts are bound to apply Indiana law in a diversity case such as this and thus all of plaintiffs' claims as to Pratt and Amsted, Westinghouse, and American Chain and Acco are barred by the statute of limitations and lack of privity.

Defendant Mohr is the only defendant not to file a motion for summary judgment and therefore this action will continue to pend against him.

IT IS THEREFORE ORDERED that:

1. Defendant Mohr's motion for partial judgment on the pleadings, which the court treats as a motion for partial summary judgment on the issue of plaintiffs' right to recover for loss of consortium is hereby GRANTED in Counts 4, 5, 10, 11, 16 and 17 under Cause No. H 81–669 (DeHoyos) and judgment is ordered entered in favor of defendant Mohr and against the plaintiffs as to said issue of loss of consortium. The court further ORDERS judgment be entered in favor of the defendant Mohr and against the plaintiffs on the issue of consortium in all other complaints.

2. Defendant Mohr's motion for partial judgment on the pleadings, which the court will treat as a motion for partial summary judgment on the issue of plaintiffs' right to recover punitive damages is hereby GRANTED; and judgment ordered entered thereon;

3. Defendants Pratt and Amsted's motion for summary judgment is hereby GRANTED as to Counts 7 through 18, inclusive, in H 81–669 (DeHoyos), Counts 9 through 24, inclusive, in H 81–672 (Black), Counts 5 through 12, inclusive, in H 81–684 (Collins), and Counts 5 through 12, inclusive, in H 81–689 (Goins) and judgment is ordered entered in favor of defendants Pratt and Amsted and against all plaintiffs;

4. Defendant Westinghouse's motion for summary judgment is hereby GRANTED in Counts 31 through 36, inclusive, in H 81–669 (DeHoyos), Counts 41 through 48, inclusive, in H 81–672 (Black), Counts 21 through 24, inclusive, in H 81–684 (Collins), and Counts 21 through 24, inclusive, in H 81–689 (Goins) and judgment is ordered entered in favor of defendant Westinghouse and against all plaintiffs;

5. Defendants American Chain and Acco's motion for summary judgment is hereby GRANTED in Counts 19 through 30, inclusive, in H 81–669 (DeHoyos), Counts 25 through 40, inclusive, in H 81–672 (Black), Counts 13 through 20, inclusive, in H 81–684 (Collins), and Counts 13 through 20, inclusive, in H 81–689 (Goins) and judgment is ordered entered in favor of defendants Acco and American Chain and against all plaintiffs;

6. The court, *sua sponte*, DISMISSES Counts 25 through 28, inclusive, against John Doe Companies in H 81–684 (Collins) for failure to perfect service pursuant to

General Rule 27 and Rule 4(j) of the FED. R.CIV.P.;

7. Pursuant to Rule 54(b) of the FED.R. CIV.P., the court now expressly determines that there is no just reason for delay and directs that entry of final judgment be made as to each of the summary judgments granted in favor of the defendants, Pratt and Amsted, Westinghouse, and American Chain and Acco, as to all claims against all plaintiffs; and

8. This action will continue against the lone remaining defendant Mohr absent the issues of consortium and punitive damages.

### Appendix A

### ALLEGED CAUSES OF ACTION

| Cause No.; Plaintiffs; (Decedent) | | | Defendants; Counts | | | |
|---|---|---|---|---|---|---|
| **H81–669 DeHoyos, Hoffman, Harris** | Mohr | Pratt | Amsted | Am.Chain | Acco | West. |
| Strict Liability in Tort | 1 | 7 | 13 | 19 | 25 | 31 |
| Negligence | 2 | 8 | 14 | 20 | 26 | 32 |
| Exp. & Imp. Warranty | 3 | 9 | 15 | 21 | 27 | 33 |
| Intangibles (DeHoyos) | 4 | 10 | 16 | 22 | 28 | 34 |
| Intangibles (Hoffman) | 5 | 11 | 17 | 23 | 29 | 35 |
| Willful/Wanton Conduct | 6 | 12 | 18 | 24 | 30 | 36 |
| **H81–672 Black and Fields** | Mohr | Pratt | Amsted | Am.Chain | Acco | West. |
| Strict Liability in Tort | 1–2 | 9–10 | 17–18 | 25–26 | 33–34 | 41–42 |
| Negligence | 3–4 | 11–12 | 19–20 | 27–28 | 35–36 | 43–44 |
| Exp. & Imp. Warranty | 5–6 | 13–14 | 21–22 | 29–30 | 37–38 | 45–46 |
| Willful/Wanton Conduct | 7–8 | 15–16 | 23–24 | 31–32 | 39–40 | 47–48 |

| H81–684 Collins (Goins) | Mohr | Pratt | Amsted | Am.Chain | Acco | West. | John Doe Cos. |
|---|---|---|---|---|---|---|---|
| Strict Liability in Tort | 1 | 5 | 9 | 13 | 17 | 21 | 25 |
| Negligence | 2 | 6 | 10 | 14 | 18 | 22 | 26 |
| Exp. & Imp. Warranty | 3 | 7 | 11 | 15 | 19 | 23 | 27 |
| Willful/Wanton Conduct | 4 | 8 | 12 | 16 | 20 | 24 | 28 |

| H81–689 Goins (Goins) | Mohr | Pratt | Amsted | Am.Chain | Acco | West. |
|---|---|---|---|---|---|---|
| Strict Liability in Tort | 1 | 5 | 9 | 13 | 17 | 21 |
| Negligence | 2 | 6 | 10 | 14 | 18 | 22 |
| Exp. & Imp. Warranty | 3 | 7 | 11 | 15 | 19 | 23 |
| Willful/Wanton Conduct | 4 | 8 | 12 | 16 | 20 | 24 |

Note: Plaintiffs DeHoyos, Hoffman, Black and Fields have also sued in their individual capacity as surviving spouses of their respective decedents.

Under H81–672, plaintiffs have alleged identical counts throughout the complaint for each plaintiff naming Black as the plaintiff in all odd numbered counts and fields as the plaintiff in all even numbered counts. For example, Black is named as plaintiff alleging strict liability in tort against defendant Mohr in Count 1 and Fields is named as plaintiff alleging strict liability in tort against Mohr in Count 2.

Appendix B

Top View
Valve Open

Side View
Chain Mechanism

OPERATOR

CHAINWHEEL

INDICATING
ARROW

INDICATING
PLATE