FMC CORPORATION, Appellant,

v.

Sharon K. BROWN, administratrix of the Estate of Danny R. Brown, Deceased, Appellee.

No. 18S04–9003–CV–181.

Supreme Court of Indiana.

March 7, 1990.

Frank E. Gilkison, Beasley, Gilkison, Retherford, Buckles & Clark, Muncie, Stephen M. Shapiro, John E. Muench, Mayer, Brown & Platt, Chicago, Ill., Russell H. Schussler, Robert L. Bever, Harlan, Schussler, Keller, Boston & Bever, Richmond, for appellant.

Perry W. Cross, P. Gregory Cross, Cross, Marshall, Schuck, Deweese, Cross & Feick, P.C., Muncie, for appellee.

## PETITION TO TRANSFER

DeBRULER, Justice.

In this case, a crane being operated at a construction site came in contact with a power line, and Danny R. Brown, a twenty-eight-year-old laborer acting as groundman, was electrocuted. His widow brought this wrongful death products liability suit against FMC, the manufacturer

of the crane, alleging that the crane was in a defective condition unreasonably dangerous to users because it was not equipped with a proximity warning device or an insulated link. FMC claimed that incurred risk, misuse, and open and obvious danger negated its liability, and claimed further that a crane would be more dangerous with the warning device or insulated link. The jury returned a verdict for the plaintiff, and a judgment was rendered for approximately three million dollars. On appeal, the judgment was reversed and the cause remanded for a new trial. *FMC Corp. v. Brown* (1988), Ind.App., 526 N.E.2d 719. We grant transfer, adopt the opinion of the Court of Appeals in part, and affirm the judgment.

On appeal, FMC raised several issues which were resolved by the Court of Appeals, which issues related to the following questions, namely, (1) whether a defense motion for judgment on the evidence was correctly denied, (2) whether the evidence of a defective and unreasonably dangerous product was sufficient, (3) whether an instruction characterizing open and obvious danger as an affirmative defense upon which the defendant bears the burden of proof was proper, and (4) whether the issue of lost future earnings was properly given to the jury absent proof of the present value of such earnings. FMC also raised two issues which were not resolved due to the reversal, namely, (1) whether the trial court committed error in restricting its voir dire examination, and (2) whether the evidence supported the verdict amount.

■ In resolving the first two issues above, the opinion of the Court of Appeals notes in detail evidence that cranes of this type are routinely employed in close proximity to power lines and that operators have a limited capacity to judge clearances between the cranes and power lines. There was proof that the cab of this crane was constructed so as to block the view of the operator in a critical manner when making certain maneuvers. This was in juxtaposition with the massive evidence presented by the manufacturer that the danger resulting from this crane striking the lines

was open and obvious and was appreciated by both Brown and the operator. There was also evidence that the proximity warning device was a feasible, available, and well understood and appreciated instrument in the industrial community to augment the user's limited capacity to perceive a nearby power line when engaged intently upon safely delivering a load. Testimony demonstrated as well the effectiveness of the insulated link in preventing electrocution. This evidence is conflicting and would permit the reasonable inferences in favor of the plaintiff that the crane without such safety devices was a defective and unreasonably dangerous product and that the failure to install such devices was one proximate cause of Brown's death. Under this state of the evidence, a judgment on the evidence is improper, *Jones v. Gleim* (1984), Ind., 468 N.E.2d 205, and the trial court correctly denied FMC's motion.

■ The events giving rise to this civil complaint and the trial itself occurred after the enactment of the 1978 Indiana Product Liability Act, I.C. 33–1–1.5–1 *et seq.* The open and obvious danger rule asserted in *Bemis Co. v. Rubush* (1981), Ind., 427 N.E.2d 1058, does not apply to strict liability claims under the Product Liability Act. *Koske v. Townsend Engineering* (1990), Ind., 551 N.E.2d 437. It is now clear that evidence tending to prove an observable danger or defect of a product is simply that, evidence relevant and material to the issue of whether the product was defective and unreasonably dangerous and to the statutory affirmative defense of incurred risk.

■ At trial, counsel, on behalf of their respective clients, and the trial court, in furtherance of its judicial duty, attributed differing legal consequences to the evidence in the case that the danger existing when operating a crane in proximity with power lines should have been known and discernible by users such as Brown and the operator. Defense counsel sought to ascertain from the prospective jurors during voir dire how each would respond to an instruction from the court that liability cannot stem from a product presenting an

open and obvious danger. Plaintiff's counsel objected on the basis that the principle was not pleaded in the answer. The objection was sustained and voir dire in this form was duly curtailed. FMC asserts that this restriction of its voir dire examination constituted reversible error. To constitute sufficient basis for reversal, trial court error must be such that it impinges upon and prejudices a substantial right such that a fair trial was not accorded. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Grimes v. State* (1983), Ind., 450 N.E.2d 512. The purpose of allowing voir dire examination of prospective jurors is to permit the rational exercise of the rights of challenge, peremptory and for cause. FMC pleaded the defenses of incurred risk and misuse. Such defenses call for close scrutiny of any alleged defect in a product, the awareness of the user of any resultant danger, and the reasonableness of the use. FMC was given the full opportunity to probe jurors regarding these matters, and we find that such opportunity provided a satisfactory basis for determining any juror bias or interest with reference to the then-assumed defense of open and obvious danger. The restraint imposed by the court's ruling, even if error, is not cause for a new trial.

■ By that point in the trial at which the plaintiff rested, there was much evidence regarding the nature of the alleged defect in the crane and the knowledge of Brown and the operator of it. At that point in the trial, FMC, while reserving its claim that the trial court had erred in sustaining the objection to voir dire, made a motion to amend its answer to include a defense of open and obvious danger, which motion was granted. The testimony presented by both parties would support an inference that both the decedent Brown and the operator of the crane were aware of the dangers existing when a crane with a long boom is operated in the vicinity of power lines. That aspect of the danger was addressed in final summation. It was addressed in the final jury instructions. Instruction No. 1, which described the nature of the action and the contentions of the parties, provided in part:

The defendant, FMC Corporation, denies any liability to the plaintiff, and contends that it is not responsible for the death of Danny Brown. The defendant denies that the crane was defective and denies that the crane was unreasonably dangerous as manufactured and delivered to the purchaser. As part of such denial, the defendant asserts that it gave adequate warnings of any danger associated with the product.

The defendant further asserts as affirmative defenses: (1) the crane was not unreasonably dangerous because the alleged defective condition was open and obvious to the decedent; (2) the decedent had discovered the alleged defect and was aware of the danger but nevertheless proceeded to make use of the product and was.... [Record incomplete.] The defendant further contends in defense that the cause of Danny Brown's death was the nonforeseeable misuse of the crane.

Instruction No. 2 provided in part:

If the plaintiff sustains his burden of proof and you find no applicable defenses exist, then the defendant has strict liability in tort for the plaintiff's damage.

Instruction No. 4 informed the jury in part:

Plaintiff has the burden of proving the following propositions:

First: That the Linkbelt model LS108–B lattice boom crane manufactured by the defendant, FMC Corporation was sold to Bowen Engineering Corporation in a defective condition unreasonably dangerous to users or consumers of the crane, such as Danny Brown.

Instruction No. 5 stated the following:

The defendant has raised the following affirmative defenses:

1. That the plaintiff's decedent, Danny Brown, had knowledge of the defect and was aware of the danger, but nonetheless proceeded unreasonably to make use of it.

2. The cause of plaintiff's damage was the nonforeseeable misuse of the crane by Danny Brown or others.

3. That the crane was not unreasonably dangerous because the alleged defective condition was open and obvious to the decedent Danny Brown.

In a products liability action, the defendant has the burden of proving by a preponderance of the evidence any defense it may raise.

I.C. 33–1–1.5–4

FMC made the following objection to Instruction Nos. 1 and 5:

Yes, your Honor, we would have objections to Court's instruction number one just to the extent it does illustrate or indicate that the defense of open and obvious is an affirmative defense ... [;] we do object to the concept that open and obvious is an affirmative defense. We believe it goes to whether there is a duty for purposes of warning ... [and is] all part of the definition of unreasonably dangerous and defective which is part of the plaintiff's burden. We do not believe that the case law supports the proposition of open and obvious ... [as an] affirmative defense which must be raised. Consequently, to that extent, we object to the Court's instruction number one and those would be identical objection to Court's instruction number five. And the defendant would object to the instruction as earlier stated in that it requires open and obvious as an affirmative defense with the defendant having the burden which we do not believe we do.

The trial court overruled the objection, and the Court of Appeals observed that the objection was well taken as it relates to Instruction No. 5, holding that the open and obvious danger rule from *Bemis*, 427 N.E.2d 1058, is not an affirmative defense, and thus it was error to place the burden of proof on FMC, and that this incorrect statement of the law was not harmless error. Therefore, the Court of Appeals reversed the judgment and ordered a new trial, with one judge dissenting. We have granted transfer for the purpose of reexamining the harmless error determination.

In the opinion of the majority of the Court of Appeals, the instruction was reversible error in that it elevated a denial of an essential element of the claim to an affirmative defense and assigned the burden of its proof to FMC. The cases relied upon include two negligence cases in which instructions erroneously placed the burden of proving freedom from contributory negligence upon the plaintiff. *Harper v. James* (1965), 246 Ind. 131, 203 N.E.2d 531; *Deckard v. Adams* (1965), 246 Ind. 123, 203 N.E.2d 303. A third case involved an action to resist the probate of a will. *Johnson v. Samuels* (1917), 186 Ind. 56, 114 N.E. 977. In that case, instructions erroneously relieved the proponents of the will from making a prima facie case of due execution. The harm befalling the plaintiffs in the negligence cases and the opponents of the will in the other case is easily discerned. They were required by the error to shoulder the burden of either proving a condition or suffering an adverse judgment. Here, the harm befalling FMC is not so easily to be found.

Unlike the parties in the cases considered by the Court of Appeals, FMC would not suffer an adverse judgment as a necessary consequence of any failure to successfully shoulder the erroneously assigned burden of proving an open and obvious danger. Under Instruction 2, quoted above, such failure could have no consequence at all unless the plaintiff was first successful in sustaining its burden of proof to prove a defective and unreasonably dangerous product. Hence, the harm, if any, to FMC is unlike the harm suffered by the parties in the cases considered by the Court of Appeals.

At no point do the instructions appear to relieve the plaintiff below of the just burden of proving each of the elements of its products liability claim or to make the satisfaction of that burden simpler or easier. Generally, an instruction having such a result is contrary to law and the error in giving it is not harmless. *Aylesworth v. McKesson* (1981), Ind.App., 421 N.E.2d 422. The danger posed by the instruction before us is not of this category. Such danger would not arise here unless the jury equated the defense claim of an open and obvious danger with the plaintiff's product liability claim or an essential element of that

claim, deeming itself faced with conflicting and contradictory orders. This the jury would not have done. The jury would have instead considered the two claims to be separate by reason of the court's instruction to it that each be separately determined, the plaintiff's claim first and the defense claim thereafter, and by reason of the different language employed in describing the classifying characteristics of the categories of product to which each apparently refers.

In assessing whether the instructions constituted reversible error, some weight is to be accorded the fact that FMC received a fair opportunity to persuade the jury of the validity of its affirmative defenses of incurred risk and misuse. The jury received the following instructions referring to those defenses:

*Instruction No. 6.*
The defendant has raised the defense that Danny Brown incurred the risk of his injuries. The doctrine of incurred risk under Indiana law is that one incurs all of the normal risks of a voluntary act, so long as he knows and understands the potential risks. Therefore, even if you find by a preponderance of the evidence that Danny Brown was injured as a result of a risk arising out of a defective and unreasonably dangerous condition of the crane in question, if you further find that he knew and understood such risk, then you should find for the defendant.

*Instruction No. 10.*
The defendant, FMC Corporation, had no legal duty to provide the crane in question with devices and warnings against dangers or the potentiality of dangers which Danny Brown knew or should have known, or which were generally known and recognized by users of cranes because they were obvious; nor was the defendant required to foresee and protect Danny Brown from his own carelessness in failing to recognize the open and obvious danger involved.

*Instruction No. 19.*
When I say that a party has the "burden of proof" on any issue or use the expression, "if you find from a preponderance of the evidence," I mean you must be convinced from a consideration of all the evidence in the case that the issue which a party has the burden of proving is more probably true than not true.

The affirmative defense of incurred risk bears a close relationship to the open and obvious danger rule as considered in former cases. *See Koske,* 551 N.E.2d 437. Thus the decision of the trier of fact to reject the two unquestioned defenses, after concluding that the crane was defective and unreasonably dangerous without the safety devices, suggests a fair resolution of the case as a whole. Ind.R.App.P. 15(E).

The dissimilarity of this case and previous cases necessitated a discrete assessment of the harmlessness of the error. Having made such assessment, we are satisfied that the errors in jury instructions were harmless and provide no basis for reversing the judgment.

■ FMC also claims on appeal that the damage award was grossly excessive. In an action such as this for wrongful death, "the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission." I.C. 34–1–1–2. The decedent died instantly. He was 28 years of age, with a life expectancy of 45.4 years. He was a laborer, earning $16,500 per year. Damages are awarded for the pecuniary loss suffered by the decedent's dependent next of kin and for those who supply certain services in connection with the death. Decedent left a wife and two small children, ages 5 and 3, surviving. Based on the language, "including, but not limited to," the statutory measure of damages has been construed to include personal human loss. In an action for wrongful death of a married woman, this Court said:

The deprivation of the husband and children of her care, love, and affection, and training and guidance of the children are elements of damages to be considered by the jury in arriving at a verdict.

*American Carloading Corp. v. Gary Trust & Sav. Bank* (1940), 216 Ind. 649, 660, 25 N.E.2d 777, 782. The compensation for pecuniary loss must be within the range of the evidence and reasonable inferences therefrom, that is, it must be rationally based. *Henschen v. New York Cent. R. Co.* (1945), 223 Ind. 393, 60 N.E.2d 738. The standard applicable when reviewing a claim of excessiveness of a judgment reflects the essential factual character of the question. The following holdings from this Court are illustrative:

> It may be well to observe here ... that no precise rule for estimating the loss recoverable under the statute can be laid down. When the relation of the party, whose death has been caused, to those for whose benefit the suit is being prosecuted, has been shown, and his obligation, disposition and ability to earn wages or conduct business, and to care for, support, advise and protect those dependent upon him, the matter is then to be submitted to the judgment and sense of justice of the jury.

*Louisville, New Albany & Chicago Ry. Co. v. Buck* (1888), 116 Ind. 566, 569, 19 N.E. 453 (thirty-year-old railroad brakeman, in good health and of industrious habits, leaving wife and child; $10,000 judgment upheld).

> Were the damages excessive? We have carefully examined the evidence disclosed by the record in this case, and from which we cannot say that the amount fixed by the jury is so large that it cannot be explained on any reasonable hypothesis other than from prejudice, passion, partiality, corruption, or that some improper element was taken to account. Having reached this conclusion, we are not permitted under the rulings of this court to interfere with the jury's action in this matter.

*Citizens Tel. Co. v. Prickett* (1919), 189 Ind. 141, 162–63, 125 N.E. 193, 200 (personal injury, $12,000 judgment upheld).

> While it is true that no one testified as to the value of these services in dollars and cents, we do not think such evidence essential to the submission of such evidence to the jury. It is for the jury in the range of discretion given them under the law and the evidence, and applying the results of their common observation and daily experience, to estimate and determine the value of such services.

*Jackson v. Record* (1937), 211 Ind. 141, 149, 5 N.E.2d 897, 900 (forty-three-year-old mother of three, maintained family home and worked outside home; $7500 judgment upheld).

> In order to justify us in reversing the judgment on such ground, the amount of damages assessed must appear to be so outrageous as to impress the court at "first blush" with its enormity.

*New York Central R.R. Co. v. Johnson* (1955), 234 Ind. 457, 466, 127 N.E.2d 603, 608 (wrongful death award to dependent mother based on death of supporting adult daughter upheld).

Recent cases decided in our appellate courts also demonstrate the latitude accorded to juries in making damage award determinations. A verdict of $474,712[1] was assessed as damages on behalf of a surviving twelve-year-old son for the death of his mother, and defendant's claim that it was excessive was rejected. *State v. Bouras* (1981), Ind.App., 423 N.E.2d 741. In *Burnett v. State* (1984), Ind., 467 N.E.2d 664, the jury returned a $6000 verdict on behalf of a wife for the wrongful death of her husband. Despite the fact that the amount barely covered the actual monetary loss due to death expenses, deference was afforded this meagre verdict. In *Dunkelbarger Construction Co. v. Watts* (1986), Ind.App., 488 N.E.2d 355, the wrongful death of a sixty-two-year-old man resulted in a $700,000 judgment. He left a widow surviving. $469,000 of that amount was attributable to the loss of care, love and affection to the wife, and the claim of excessiveness was rejected.

On the issue of damages in the trial below, proof was presented showing funeral and burial expenses in the sum of

---

**1.** The award was ultimately reduced to $300,000 by virtue of the cap imposed on judgments recoverable against the State of Indiana under I.C. 34–3–16.5–4.

$4,720. The decedent's earnings were erratic, but his annual income before his death reached $16,457. He was a steady worker and had planned to become a carpenter's apprentice. Success in that endeavor would have increased his earnings by fifty percent. Had the jury credited this evidence, it would have been persuaded that the out-of-pocket loss occasioned by the death totaled $919,000.

The plaintiff sought and was granted damages approaching the sum of two million dollars for the loss of care, love, and affection which she and the two children sustained as a result of Brown's death. The record reflects that the widow was uneducated, unskilled, and had few advantages of life. She lived with the decedent, without benefit of marriage, and gave birth to their two children in the years 1976 and 1978. After problems concerning his prior marriage were resolved, the two married, and the two children were legitimized by voluntary paternity actions. Six months after these many problems were resolved, she was widowed. She was left with an unfinished house remodelling project. She became violent with the children. She sought and received counseling. She started a garden and canned food. She worked part time at minimum wage and completed her high school education after two years. In need, she married after four years.

Here, the two million dollars is intended to compensate the three dependent next of kin, the widow, age 24, and the two children, a boy and girl, age 5 and 3 respectively. The children remain dependent upon her alone until majority. The loss to the children of the care, love, affection, and guidance of their father is evident and will last throughout the many years of their remaining minority. The loss to the wife was devastating and exceptional. After his death, she was left alone, without support or skills, and was required to struggle to maintain a reasonable level of existence and to improve her conditions. FMC points out that the interest from the investment of this judgment alone will provide handsomely for them. It is true that the jury verdict is a generous one; however, the deference accorded jury assessments of damages by our standard of review does not sanction a reversal on that basis. *Dunkelbarger*, 488 N.E.2d 355. We note that in his consideration of FMC's motion to correct error, the trial judge reviewed the appropriateness of the size of this verdict and approved it by denying the motion. The judicial reaction, "at first blush," to this judgment is perspicacity and not outrage. Upon examination, these damages do not indicate passion, prejudice, or partiality, but instead reflect a reasoned assessment. The judgment is not excessive.

Transfer is granted and the opinion of the Court of Appeals is adopted; however, we find that the error in instructions was harmless. We likewise determine that the remaining appellate claims are properly resolved in favor of the appellee. The judgment is accordingly affirmed. Petition for oral argument is denied.

SHEPARD, C.J., and DICKSON, J., concur.

GIVAN, J., concurs in result.

PIVARNIK, J., not participating.