Rosetta JOHNSON, Administratrix of the Estate of Albert Johnson, Deceased, Plaintiff,

v.

**INLAND STEEL COMPANY,**
a Delaware Corporation,
Defendant.

No. 87 C 5541.

United States District Court,
N.D. Illinois, E.D.

Jan. 23, 1992.

Steven B. Salk, Chicago, Ill., for plaintiff.

Loretta Griffen, Elliot R. Schiff, O'Connor & Schiff, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

EDWARD A. BOBRICK, United States Magistrate Judge.

The defendant in this case, Inland Steel Company ("Inland") has filed a series of separate motions in limine, seeking to bar certain objected to evidence or witnesses. We herewith combine the rulings for each of the motions into this single order.

### I. MOTION IN LIMINE TO BAR EVIDENCE OF LOSS OF CONSORTIUM DAMAGES

■ The plaintiff in this case, Rosetta Johnson, brings this action under the Indiana Wrongful Death Statute, Ind.Code § 34–1–1–2, alleging that Inland is responsible for decedent's death, which occurred while the decedent was working on Inland property. The decedent is survived by his spouse, Rosetta Johnson, and his 29–year–old daughter, Yolanda Johnson. As the parties agree that Indiana law governs this matter, the court will apply the law of that jurisdiction in its analysis of the motions before it. *City of Clinton, Ill. v. Moffitt,* 812 F.2d 341, 342 (7th Cir.1987); *Moore v. Powermatic,* 738 F.Supp. 1188, 1190 (N.D.Ill.1990). Indiana's Wrongful Death Statute provides, in pertinent part:

When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for

an injury for the same act or omission. When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two (2) years, and the damages shall be in such an amount as may be determined by the court or jury, including, but not limited to, reasonable medical, hospital, funeral and burial expenses, and lost earnings of such deceased person resulting from said wrongful act or omission. That part of the damages which is recovered for reasonable medical, hospital, funeral and burial expense shall inure to the exclusive benefit of the decedent's estates for the payment thereof. The remainder of the damages, if any, shall, subject to the provisions of this article, inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased.

\* \* \*

Ind.Code § 34-1-1-2. We consider Inland's motions in light of this statute and the case law interpreting it.

Inland's motion to exclude evidence of loss of consortium damages to Rosetta Johnson is based on the fact that the same act that allegedly caused decedent's injury and any loss of consortium simultaneously caused the decedent's death. Inland argues that when death is instantaneous, there can be no recovery for loss of consortium under Indiana law because recovery for loss of consortium is limited to the period between the injury and the decedent's death. Plaintiff asks this court to distinguish between loss of consortium, which may terminate at decedent's death, and pecuniary loss to a surviving spouse of love, care, and affection. With some difficulty, given the often interchangeable references to loss of consortium and damages available under the wrongful death statute, we accept plaintiff's distinction and deny Inland's motion in limine.

The central stumbling block in this matter would appear to be the decision in *De-*

*Hoyos v. John Mohr & Sons*, 629 F.Supp. 69 (N.D.Ind.1984), upon which Inland relies. There, the court considered a claim for loss of consortium damages in a wrongful death case, and stated that:

"[i]t has been well settled in Indiana that, where the same wrongful act which causes a loss of consortium also causes the death of the spouse, the period of time for which recovery for loss of consortium may be had is limited to the time between the commission of the injury and the date of the death of the injured spouse. *Bemis Co. Inc. v. Rubush*, 401 N.E.2d 48, 63 (Ind.App.1980), *rev'd on other grounds*, 427 N.E.2d 1058 (Ind. 1981); *Burk v. Anderson*, 232 Ind. 77, 109 N.E.2d 407 (1952); *Long v. Morrison*, 14 Ind. 595 (1860)."

629 F.Supp. at 73. Accordingly, the court found that where the death of the decedent was instantaneous, recovery for loss of consortium damages to a surviving spouse was precluded. *Id.* The court then qualified its holding, noting that "such an exclusion of damages for "consortium" does not necessarily exclude all 'intangibles' such as loss of love, affection, and guidance provided by a parent to children." *Id.* The dispute between the parties here arises over the interpretation of this qualification. Inland maintains that, based on the court's use of the phrase, "provided by a parent to children," this qualification indicates that where death is instantaneous, only minor children can maintain a claim for loss of love, care, and affection. Plaintiff argues that a claim for lost love, care, and affection may be maintained by a spouse as well, distinguishing those elements of damages from a claim for loss of consortium.

In *Long v. Morrison*, upon which the *DeHoyos* court relied in part, the court noted that a husband had a common law action for loss of consortium between the injury to his wife and her death, and a distinct cause of action under the statutes for wrongful death. 14 Ind. at 597. In *Burk v. Anderson*, also cited in *DeHoyos*, the court also stated that a claim for loss of consortium was confined to the period between the date of the commission of the

injury to the spouse and the date of the death of the spouse. 109 N.E.2d at 408. There, too, the cause of action for loss of consortium was distinct from that under the wrongful death statute. *Id.*

The limitation on claims for loss of consortium was finally explained in a third case again relied upon in *DeHoyos, Bemis Co., Inc. v. Rubush,* 401 N.E.2d 48 (Ind. App.1980). In *Bemis,* a case which did not involve the Wrongful Death Statute, the court had occasion to consider the common law claim for loss of consortium. 401 N.E.2d at 63. The court noted that consortium was a right growing out of marriage. *Id.* The dissolution of marriage, the court reasoned, whether by divorce or widowhood, would therefore cut off the right of consortium. *Id.* In other words, only a married individual could claim a so-called right of consortium. Accordingly, the court explained that no claim for loss of consortium could be maintained and for any period outside the pendency of the marriage. *Id.* This idea flows from the fact that while one spouse is injured so as to be unable to provide consortium, the other spouse is at once denied that right and unable, during the pendency of the marriage, to legally seek it elsewhere. From this, the *DeHoyos* court reasoned that when the same wrongful act caused the injury and death of the spouse, there would be no pendency of marriage during which the right of consortium would be lost. 629 F.Supp. at 73. The right of recovery for loss of consortium, then, is tied to the pendency of the marriage, and if such damages are sought as part of a claim under the Wrongful Death Statute,. they are precluded in cases of instantaneous death. This line of cases, culminating in *DeHoyos,* says nothing about the extent of damages available under the Wrongful Death Statute. The case law reveals, however, that damages available under the Wrongful Death Statute go beyond loss of consortium to encompass, as plaintiff argues, loss of love, care, and affection to a surviving spouse.

The Indiana Supreme Court's opinion in *FMC Corp. v. Brown,* 551 N.E.2d 444 (Ind. 1990) provides a fine example. In *Brown,* the decedent died instantly when he was electrocuted by a power line, and left a wife and two minor children. 551 N.E.2d at 445. The jury in the case awarded two million dollars in damages for the loss of care, love, and affection sustained not only by the children, but the wife as well. *Id.* at 451. In upholding the award, the Indiana Supreme Court called the loss to the wife "exceptional," as "she was left alone, without support or skills, and was required to struggle to maintain a reasonable level of existence and to improve her conditions." *d.* at 451. Clearly, the court singled out the spouse's claim for loss of love, care, and affection. Similarly, the appellate court in *Dunkelbarger Construction Co. v. Watts,* 488 N.E.2d 355 (Ind.App.1986) upheld a $469,000 wrongful death award attributable to loss of love, care, and affection to a widow. These cases, along with the aforementioned history behind loss of consortium and wrongful death actions, lead us to believe that a wrongful death action may encompass traditional loss of consortium damages, but also allows recovery for loss of love, care, and affection.

■ One further point supports our interpretation. In wrongful death cases, Indiana follows the majority rule providing that a surviving spouse's remarriage, or possibility thereof, does not affect the damages recoverable. *City of Bloomington v. Holt,* 172 Ind.App. 650, 361 N.E.2d 1211, 1219 (1977); *see also Hing v. Youtsley,* 10 Ariz.App. 540, 460 P.2d 646 (1970); *Benwell v. Dean,* 249 Cal.App.2d 345, 57 Cal. Rptr. 394 (1967); *Pape v. Kansas Power and Light Co.,* 231 Kan. 441, 647 P.2d 320 (1982); *Wood v. Detroit Edison Co.,* 409 Mich. 279, 294 N.W.2d 571 (1980). The rationale underlying the majority rule is that a wrongful death cause of action arises at the time of the decedent's death and the damages are determinable at that same time. Any comparisons of the benefits of past and future marriages are far too speculative. This rule demonstrates that while loss of consortium damages are tied to the pendency of the marriage, wrongful death damages are not. Loss of consortium damages end with the end of

the marriage—the surviving spouse becomes legally free to replace what has been lost at that time. Wrongful death damages do not necessarily look to what is lost during the pendency of the marriage, but what is lost through the death of one's spouse. This loss, under Indiana law, includes love, care, and affection.

For these reasons, the motion of Inland to exclude evidence of loss of consortium damages, insofar as those damages may be interpreted to include loss of love, care, affection to a surviving spouse, is DENIED.

## II. MOTION LIMINE TO BAR EVIDENCE OF DAMAGES SUSTAINED BY YOLANDA JOHNSON

■ Inland's motion to exclude evidence of pecuniary loss to decedent's daughter, Yolanda Johnson, based on that portion of Indiana's Wrongful Death Statute providing that damages other than medical and funeral expense shall "inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin." Ind.Code § 34–1–1–2. Inland notes that the record reveals that Yolanda Johnson, at the time of her father's death, was a 29–year–old woman living in her own apartment, earning $15,000 per year, but receiving occasional gifts of money from her father. Given these facts, Inland argues, Yolanda Johnson cannot be considered a dependent child and, therefore, is not entitled to damages under the Wrongful Death Statute. Plaintiff argues that Inland merely raises a factual dispute as to the nature of Yolanda's dependency on her father which cannot be decided on a motion in limine.

■ In 1955, the Indiana Supreme Court first established the standard for dependency under the Wrongful Death Statute in *New York Central Railroad Co. v. Johnson*, 234 Ind. 457, 127 N.E.2d 603 (1955), and reiterated that standard in *Wilson v. Redinbo*, 519 N.E.2d 568 (Ind.1988). "Proof of dependency must show a need or necessity for support on the part of the dependent … coupled with the contribution to such support by the deceased." *Redinbo*, 519 N.E.2d at 569, *quoting Johnson*, 234 Ind. at 465, 127 N.E.2d at 607. A legal obligation to support is unnecessary to establish dependency under the statute. *Lustick v. Hall*, 403 N.E.2d 1128, 1131 (Ind.App.1980). In addition, a partial, rather than a total dependency, is sufficient to support recovery under the statute. *Id.*

Inland submits that mere evidence of occasional gifts is insufficient to meet these criteria. While that may prove to be the case, the degree of dependency and amount of contribution are factual issues for the jury. *Redinbo*, 519 N.E.2d at 569. What Inland attempts to do through its motion in limine is to resolve these factual questions as a matter of law. A motion in limine is designed to narrow evidentiary issues for trial, not resolve factual disputes or weigh evidence. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3rd Cir.1990). To do what Inland suggests would convert the motion to one for summary judgment on Yolanda Johnson's claim, which cannot be done without the appropriate procedures provided by Fed. R.Civ.P. 56. *Id.* at 1070. Accordingly, as Inland's motion presents a question for the trier of fact, it is denied.

For these reasons, the motion of Inland to exclude evidence of pecuniary loss to Yolanda Johnson is DENIED.

## III. MOTION IN LIMINE TO BAR EVIDENCE OF REMEDIAL MODIFICATION

Evidence showing remedial actions or modifications taken by the defendant to correct an unsafe condition at the stairway will be excluded pursuant to Rule 407 of the Federal Rules of Evidence. However, pictorial evidence introduced for the purpose of showing the design and construction of the stairway will be allowed into evidence. Appropriate instructions will be given to the jury, if necessary, to accomplish the purpose of this ruling. To the extent that Inland's motion seeks to exclude evidence of remedial measures taken after the event allegedly leading to the

death of Albert Johnson, it is hereby GRANTED.

## IV. MOTION IN LIMINE TO BAR PLAINTIFF'S EXPERT FROM TESTIFYING AS TO THE VALUE OF DECEDENT'S SERVICES, and MOTION TO BAR PLAINTIFF'S EXPERT FROM TESTIFYING AS TO DAMAGES FOR DECEDENT'S LOSS OF QUALITY OF LIFE

 Inland's motions in limine to bar the "value of decedent's services" and "quality of life" damages seeks more than barring expert testimony in these matters. Essentially defendant reargues, with an added element, its earlier motion to bar evidence of lost consortium damages seeking to limit any reference whatsoever to quality of life, or the value of decedent's services. This is obviously aimed at limiting plaintiff's claim for these damages. In this motion Inland seeks to support its position with the proposition that Indiana's wrongful death statute, *Ind. Code § 34-1-1-2* limits compensation to decedent's dependents only to their pecuniary losses. Inland again cites the case of *DeHoyos v. John Mohr,* for the proposition that a decedent's dependents can only recover compensatory damages. We perceive that Inland misreads Indiana's wrongful death statute, as well as case law it believes upholds its position. As above discussed, the Indiana wrongful death statute provides for damages in such amounts as determined by a jury:

> ... including, *but not limited to* reasonable medical, hospital, funeral, and burial experiences and loss earnings of such deceased persons resulting from said wrongful act omission. (emphasis added)

Indiana as well as federal case law has recognized that the statute is meant to be inclusive of an array of damage claims with the specific language "... including but not limited to." In the context of the wrongful death statute, the courts have found a rather long list of compensable elements to wrongful death claims these being money or other value provided to surviving spouse and children, including what they might have received during the life time of the decedent, value of loss of care, love, and affection, and loss of parental training, among other things. *Huff v. White Motor Corp.,* 609 F.2d 286, 287 (7th Cir.1979); *FMC Corporation v. Brown,* 551 N.E.2d 444 (Ind.1990). *Dunkelbarger Construction Co. v. Watts,* 488 N.E.2d 355 (Ind.App.1986) *Richmond Gas Corporation v. Reeves,* 158 Ind.App. 338, 302 N.E.2d 795 (1973). Accordingly, we find that any evidence relating to loss sustained by the survivors such as "hedonic damages," going beyond pecuniary loss are appropriate matters for inclusion in this lawsuit. Since these matters are appropriate, expert testimony by qualified individuals would certainly be allowed into evidence. Moreover, taking into account that hedonic value of human life is difficult to measure, expert testimony becomes exceedingly important and may be of particular use to the trier of fact in this case. *Sherrod v. Berry,* 827 F.2d 195 (7th Cir.1987). Accordingly Inland's motions seeking to bar expert testimony as to damages for decedent's loss of quality of life, and for the value of decedent's services are, DENIED.

## V. MOTION IN LIMINE TO BAR TESTIMONY OF DR. JEFFERY COLE

 Inland in this motion objects to Dr. Cole's testimony essentially on the basis that he: (1) specializes in toxicology, (2) has virtually no training in the area outside his field of medicine, and (3) is not an expert in heat stress or heat stress victims. We find that Dr. Cole is a medical doctor whose specialty is occupational medicine. He has significant medical and professional experience in the steel industry in that for a relevant period of time he was the Regional Medical Director for LTV Steel Corporation. Dr. Cole has significant experience in employee health and safety programs and has been a consultant in the area of occupational safety and health.

 The core issue in this case deals with an alleged occupationally induced injury. In this setting, we believe, the opinion evidence of Dr. Cole will be reasonably reliable and will substantially assist the

trier of fact. It is clear Dr. Cole has sufficient expertise to express opinions concerning occupational safety and health. We do, however, conclude that Dr. Cole's testimony be limited to the medical aspects of occupational safety and health. We do not believe that Dr. Cole should opine as to the efficacy of stairway construction or design. Any other matters dealing with environmental surroundings, as they may affect the safety and health of employees, surely falls within the ambit of this witness' relevant expertise, and is thus allowable under Rule 702 of the Federal Rules of Evidence. Accordingly, Inland's motion in limine to bar the testimony of Dr. Cole is DENIED in part and GRANTED in part as consistent with this ruling.

## VI. MOTION IN LIMINE TO BAR TESTIMONY OF PLAINTIFF'S EXPERT ENGINEER, GEORGE A. KENNEDY.

 Inland, in this motion, argues there is an absence of any evidence to casually link any of the stairway conditions the expert engineer is expected to testify and opine upon to the reasons for decedents fall. Inland points to parts of the expert witness' testimony, given at deposition, with the view that the witness had no opinion whether the decedent tripped or slipped on the flight of steps that allegedly lead to the decedent falling to his death. We find that Inland mischaracterizes the essential content of the deposition testimony of Mr. George A. Kennedy, the plaintiff's expert engineer.

The witness quite obviously would not know (nor apparently would any one else) whether the decedent tripped or slipped. However, the expert witness' testimony as to the likelihood of a person tripping or slipping, by virtue of the condition of the steps, is cogent and may have essential value in determining the factual issues in this case.

Additionally, the witness appears to have the necessary credentials and experience to render a reliable opinion concerning safe design or construction of the stairway in question, and whether that design or construction is consistent with certain occupational safety codes and standards. We find that the witness's expertise and anticipated expert testimony will be of aid to the fact finder in this case. Inland's motion to bar the testimony of plaintiff's expert engineer is DENIED.