Phillip SCHARREL and Joyce Scharrel, Plaintiffs–Appellees and Cross–Appellants,

v.

WAL–MART STORES, INC., a Delaware corporation, Defendant–Appellant and Cross–Appellee.

No. 95CA1191.

Colorado Court of Appeals, Div. IV.

May 8, 1997.

Rehearing Denied June 26, 1997.

Certiorari Denied Jan. 20, 1998.

Haligman and Lottner, P.C., Jeffrey A. Hyman, Brenda M. Sauro, Richard I. Brown, Scott L. Levin, Denver, for Plaintiffs–Appellees and Cross–Appellants.

Hall & Evans, L.L.C., Alan Epstein, John P. Mitzner, Robert J. McCormick, Denver, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge BRIGGS.

Defendant, Wal–Mart Stores, Inc., appeals the judgment entered on a jury verdict finding it liable to plaintiffs, Phillip and Joyce Scharrel, on their claims for negligence, premises liability, and negligent infliction of emotional distress. Defendant contends the trial court erred in, among other things, admitting expert testimony on the damages plaintiffs sustained in loss of life enjoyment; refusing a proposed jury instruction on intervening cause; withdrawing during jury deliberations a separate instruction on foreseeability; and denying its motion for a directed verdict on the claim of negligent infliction of emotional distress. On cross-appeal, plaintiffs assert that § 13–21–102.5, C.R.S. (1987 Repl.Vol. 6A), which limits the amount recoverable for non-economic damages, is unconstitutional.

We reverse the award of non-economic damages on the claims for negligence and premises liability and remand the cause for a new trial on those damages. We also reverse the judgment against defendant on the claim for negligent infliction of emotional distress. We affirm the judgment against defendant on the claims for negligence and premises liability and the damage awards on those claims for economic losses and physical impairment. Finally, we uphold the constitutionality of the limitations on the award of non-economic damages under § 13–21–102.5.

Plaintiffs went to one of defendant's stores to purchase a power ice auger. Because the ice augers were located in boxes on top of a shelf approximately eight feet above the floor, plaintiffs requested the assistance of an employee in removing one of the boxes. As the employee stood on top of a ladder and attempted to remove one of the boxes from the shelf, he lost his balance. As he fell, the employee pulled down at least two of the boxes containing ice augers, as well as a display of ice chests. Both plaintiffs were struck by the falling merchandise.

Mr. Scharrel alleged he sustained permanent inner ear and brain damage, disk herniation, and, as a result of these physical injuries, a permanent psychiatric condition. Mrs. Scharrel suffered no serious physical injuries, but claimed that, as a result of the accident, she sustained emotional and psychological injuries.

Plaintiffs filed suit, alleging negligence, premises liability, negligent infliction of emotional distress, and loss of consortium. A jury returned a verdict finding defendant liable to Mr. Scharrel on his claims of negligence and premises liability and awarding him $1,027,243 for his economic losses, $1,000,000 for his noneconomic losses, and $1,000,000 for his permanent physical impairment. Pursuant to § 13–21–102.5, the trial court reduced the noneconomic damages award to $500,000.

The jury awarded Mrs. Scharrel $300,000 on her claim for negligent infliction of emotional distress. It returned a verdict in favor of defendant on her claim for loss of consortium.

I.

Defendant contends the trial court erred in permitting an expert to testify as to the amount of damages sustained by plaintiffs in loss of life enjoyment, sometimes referred to as hedonic damages. We agree.

CRE 702 permits expert testimony if it is based on scientific, technical, or other specialized knowledge, and if the opinion will assist the trier of fact in understanding the evidence or determining a fact in issue. The basis for admissibility is that the witness can offer assistance on a matter not within the knowledge or common experience of people of ordinary intelligence. *Scognamillo v. Olsen,* 795 P.2d 1357 (Colo.App.1990).

■ Here, an economist testified that the hedonic damages Mr. Scharrel and Mrs. Scharrel had sustained were, respectively, $1,656,103, and $1,308,982. The economist reached these conclusions by employing a "willingness-to-pay" method of valuation. This method measures the value of human life by examining, in the economist's words, "what we pay to prevent the loss of a life, [or] what we pay for life-saving measures."

To determine the value of life or the loss of enjoyment of life based on the willingness-to-pay approach, the economist examined studies regarding an individual's willingness to pay for safety devices, such as airbags and smoke detectors; an individual's willingness to accept payment to endure risk of death in employment, such as the risk of working as a high-rise window washer or a coal miner; and the willingness of the government to regulate with respect to safety features. Based on these studies, the economist concluded that the average life is valued at $2,300,000. In arriving at his final conclusions, the economist adjusted that figure based on each plaintiff's life expectancy and a psychologist's report purporting to estimate the percentage to which each plaintiff had lost the capacity to derive a meaningful experience from life.

In most jurisdictions that have considered the issue, the assumptions underlying expert testimony concerning hedonic damages have been criticized, resulting in the exclusion of the proffered testimony because it would not aid the jury in evaluating the evidence. *See Mercado v. Ahmed,* 974 F.2d 863 (7th Cir. 1992); *Kurncz v. Honda North America, Inc.,* 166 F.R.D. 386 (W.D.Mich.1996); *Ayers v. Robinson,* 887 F.Supp. 1049 (N.D.Ill.1995); *Hein v. Merck & Co.,* 868 F.Supp. 230 (M.D.Tenn.1994); *Sullivan v. U.S. Gypsum*

*Co.,* 862 F.Supp. 317 (D.Kan.1994); *Livingston v. United States,* 817 F.Supp. 601 (E.D.N.C.1993); *Anderson v. Nebraska Department of Social Services,* 248 Neb. 651, 538 N.W.2d 732 (1995); *Montalvo v. Lapez,* 77 Hawai'i 282, 884 P.2d 345 (1994); *Wilt v. Buracker,* 191 W.Va. 39, 443 S.E.2d 196 (1993); *Southlake Limousine & Coach, Inc. v. Brock,* 578 N.E.2d 677 (Ind.Ct.App.1991).

One criticism is that the willingness-to-pay model estimates the value of an anonymous, statistical life. It does not purport to value the loss of life enjoyment suffered by a specific plaintiff. *See Livingston v. United States, supra.* Indeed, here the economist had never met or spoken with plaintiffs, and had not attempted to ascertain whether circumstances were present in their lives which might make their enjoyment of life greater or lesser than that of the average person.

Another criticism is that factors other than risk reduction often play an important role in decisions regarding consumer purchasing, employment, and governmental regulation. For example, an individual may wish to engage in certain risk-reducing activity, such as purchasing a smoke detector, but not have the financial resources to do so. Other influences, such as advertising and civic pride, may weigh as heavily as risk reduction when an individual purchases a product or makes an employment decision. Likewise, the model does not consider the effects of political influences, such as budget restraints and political lobbying, on a government's decision to impose regulations. *See Mercado v. Ahmed, supra; see also Hein v. Merck & Co., supra* (attitudes, tastes, and psychological make-up affect one's hedonic potential more than willingness to pay).

■ We conclude the economist's testimony did not assist the jurors in determining a matter outside their knowledge or common experience and thus was not admissible under CRE 702. *See Mercado v. Ahmed, supra; Ayers v. Robinson, supra; Hein v. Merck & Co., supra; Sullivan v. U.S. Gypsum Co., supra; Anderson v. Nebraska Department of Social Services, supra; but see Johnson v. Inland Steel Co.,* 140 F.R.D. 367 (N.D.Ill.1992); *Sherrod v. Berry,* 629 F.Supp.

159 (N.D.Ill.1985), *rev'd on other grounds,* 856 F.2d 802 (7th Cir.1988). Because its admission cannot be deemed harmless, it is necessary to remand the cause for a new trial on non-economic damages.

## II.

Defendant next contends plaintiffs failed to establish a *prima facie* case of negligent infliction of emotional distress, and the trial court therefore erred in denying its motion for a directed verdict. In the circumstances presented here, we agree.

■ To establish a *prima facie* case of negligent infliction of emotional distress, plaintiff was required to present evidence from which a jury could reasonably conclude that defendant's negligence subjected her to an unreasonable risk of bodily harm and caused her to be put in fear for her own safety, that plaintiff's fear was shown by physical consequences or long-continued emotional disturbance, and that plaintiff's fear was the cause of the damages she claimed. *See Towns v. Anderson,* 195 Colo. 517, 579 P.2d 1163 (Colo.1978); *Hale v. Morris,* 725 P.2d 26 (Colo.App.1986); *CJI–Civ.3d* 9:3 (1988); *see also* Restatement (Second) of Torts § 436(2) (1965).

■ If the evidence, when considered in the light most favorable to plaintiff, compels the conclusion that reasonable persons would not disagree, and no evidence has been presented that could sustain a verdict against the defendant, then plaintiff has failed to establish a *prima facie* case. In these circumstances, the court should enter a directed verdict in favor of defendant. *See Mile Hi Concrete, Inc. v. Matz,* 842 P.2d 198 (Colo. 1992); *Montes v. Hyland Hills Park,* 849 P.2d 852 (Colo.App.1992); *Technical Computer Services, Inc. v. Buckley,* 844 P.2d 1249 (Colo.App.1992).

■ At trial, Mrs. Scharrel testified that when the boxes fell, she feared for her safety. Evidence in the record further supports a finding that she suffered, and continues to be treated for, emotional distress resulting from the incident.

However, Mrs. Scharrel presented *no* evidence that the long-continued emotional distress for which she underwent treatment was caused by her fear for her own safety. Rather, when asked what she sought from the lawsuit, she stated, "I'm asking to be fully and fairly compensated for the injuries and damages and the losses my family [has] sustained because of the injury put on to him [Mr. Scharrel] by our trip into Wal–Mart that night." She further testified that she sought medical treatment to help her and her children cope with the injuries suffered by her husband and the resulting emotional changes he was experiencing.

Mrs. Scharrel does not raise on appeal, and we do not address, the jury's rejection of her claim for loss of consortium. Our holding is limited to a determination that Mrs. Scharrel presented no evidence that fear for her own safety was the cause of the continuing emotional distress for which she sought treatment. Hence, the trial court erred in refusing to direct a verdict in favor of defendant on her claim for negligent infliction of emotional distress. *See Borras v. Sea–Land Service, Inc.,* 586 F.2d 881 (1st Cir.1978)(causal connection between negligence and emotional disturbance must exist); Restatement (Second) of Torts § 436(2) comment c (emotional disturbance must be result of fear of harm); *see generally James v. Harris,* 729 P.2d 986 (Colo.App.1986); *Millican v. Wolfe,* 701 P.2d 107 (Colo.App.1985).

## III.

Defendant next asserts the trial court erred in refusing to submit an intervening causation instruction pursuant to *CJI–Civ.3d* 9:28 (1988). We disagree.

■ Generally, one's conduct is not a cause of another's injuries if, in order to bring about such injuries, it was necessary that the conduct combine or join with an intervening cause which also contributed to cause the injuries, but which intervening cause would not have been reasonably foreseen by a reasonably careful person under the circumstances. *See Jones v. Caterpillar Tractor Co.,* 701 P.2d 84 (Colo.App.1984); *see also Perlmutter v. United States Gypsum Co.,* 4 F.3d 864 (10th Cir.1993).

However, if the negligent conduct of an actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct. *Webb v. Dessert Seed Co.,* 718 P.2d 1057 (Colo.1986); *Voight v. Colorado Mountain Club,* 819 P.2d 1088 (Colo.App. 1991); *see generally* Restatement (Second) of Torts § 442B (1965).

At trial, defendant's employee testified that the ladder upon which he was standing broke as he retrieved the ice auger for plaintiffs, causing him, and the ice augers, to fall. The augers had been placed on the top shelf in violation of defendant's policy and safety manuals, which directed that ice augers be stocked on a bottom shelf. That policy had been adopted because of accidents resulting from falling boxes.

Defendant made no attempt to designate the manufacturer of the ladder as a non-party at fault pursuant to § 13–21–111.5, C.R.S. (1987 Repl.Vol. 6A). It argued only that it was entitled to an instruction on intervening cause. However, the ladder was discarded after the accident and, as a factual matter, the record contains no evidence that the ladder broke because of a manufacturing defect.

Equally important, as a legal matter, the harm caused to Mr. Scharrel was within the scope of the risk created by defendant's conduct. Hence, an inability reasonably to foresee the particular intervening force that combined with its conduct to cause the injuries did not relieve defendant of liability for its own negligence. *See Webb v. Dessert Seed Co., supra; Voight v. Colorado Mountain Club, supra.*

We therefore conclude the trial court did not err in refusing to submit an instruction on intervening cause.

## IV.

Defendant maintains the trial court erred in withdrawing an instruction from the jury once deliberations had begun. We again disagree.

The trial court submitted the following instruction to the jury:

The negligence, if any, of the Defendant Wal–Mart, is not a cause of any injuries, damages or losses to the Plaintiff Phillip Scharrel unless injury to a person in the Plaintiff's situation was a reasonably foreseeable consequence of that negligence. The exact or precise injury need not have been foreseeable, but it is sufficient if a reasonably careful person, under the same or similar circumstances, would have anticipated that injury to a person in the Plaintiff's situation might result from the Defendant's conduct.

During its deliberations, the jury requested an interpretation of the instruction. After consultation with counsel, and over defendant's objection, the court responded by informing the jury the instruction was given in error and withdrawing the instruction.

This instruction, which is patterned after *CJI–Civ.* 9:30 (1988), should be given "only when the evidence presents a jury question on whether the injured party was a person within the foreseeable zone of danger created by defendant's negligence and thus was owed a duty by defendant." *Chutich v. Samuelson,* 33 Colo.App. 195, 518 P.2d 1363 (1973), *rev'd on other grounds,* 187 Colo. 155, 529 P.2d 631 (1974).

As already noted, defendant's policy against stacking auger boxes on top shelves was adopted because of the foreseeability of injury to someone in the position of plaintiffs at the time of the accident. The evidence did not present a jury question whether plaintiffs were persons within the foreseeable zone of danger created by defendant's negligence. Hence, as the trial court determined, the instruction should not have been given to the jury.

Defendant has likewise failed to demonstrate how the submission and then withdrawal of the instruction itself resulted in any continuing prejudice to it. We therefore find no reversible error in the trial court's actions.

## V.

Defendant also asserts the trial court abused its discretion in admitting evidence of similar incidents. We again disagree.

Plaintiffs sought to introduce a report identifying 17,000 falling merchandise incidents resulting in injuries to customers at Wal–Mart stores. The trial court admitted the report over defendant's objection that plaintiffs had failed to demonstrate substantial similarity between the incidents described in the report and the incident involving plaintiffs.

■ Evidence of prior similar incidents may be admitted if offered to establish a material fact, if logically relevant and independent of the inference that the opposing party has bad character, and if its probative value outweighs any unfair prejudice resulting from its admission. *Jacobs v. Commonwealth Highland Theatres, Inc.*, 738 P.2d 6 (Colo.App.1986).

■ The trial court is afforded substantial discretion in admitting evidence of prior acts. Hence, its ruling will not be disturbed on review absent a clear showing of abuse of discretion. *Morgan v. Board of Water Works*, 837 P.2d 300 (Colo.App.1992).

■ Here, the evidence of similar incidents was introduced, not to demonstrate negligence, but rather to show defendant had notice that a dangerous condition existed at its stores. The trial court instructed the jury to that effect.

Although defendant argues many of the incidents may not have been similar to the incident involving plaintiffs, all of the incidents involved falling merchandise. Furthermore, plaintiffs' expert testified that roughly 20% of the incidents involved injuries to the head, neck, or face, permitting the inference that at least these accidents were similar to plaintiffs'.

Defendant was free to rebut the expert's testimony, either with its own expert testimony, or by using the evidence in its possession to show which, if any, of the other incidents were in fact not similar. *See Southerland v. Argonaut Insurance Co.*, 794 P.2d 1102 (Colo.App.1990). Moreover, as already noted, defendant had adopted its policy against placing auger boxes on top of shelves because injuries to employees and customers were foreseeable.

We therefore find no reversible error in the trial court's admission of the evidence for the limited purpose of showing notice. *See Orjias v. Stevenson*, 31 F.3d 995 (10th Cir. 1994); *Morgan v. Board of Water Works, supra; Jacobs v. Commonwealth Highland Theatres, Inc., supra; see also Askew v. Gerace*, 851 P.2d 199 (Colo.App.1992)(any error in not limiting testimony of expert, absent showing of prejudice, does not require reversal).

## VI.

On cross-appeal, plaintiffs argue the trial court erred in upholding as constitutional § 13–21–102.5(3), C.R.S. (1987 Repl.Vol. 6A), which limits the amount recoverable for noneconomic damages. We disagree.

Section 13–21–102.5(3) provides that noneconomic damages awards may not exceed $250,000, unless the court finds by clear and convincing evidence that a greater award is justified. If so, the damage award cannot exceed $500,000.

■ Plaintiffs argue these statutory limitations violate their rights to equal protection and due process under the United States and Colorado Constitutions, as well as their right, pursuant to Colo. Const. art. 2, § 6, to access to the courts. However, in *Scholz v. Metropolitan Pathologists, P.C.*, 851 P.2d 901 (Colo.1993), the supreme court addressed and rejected similar challenges to § 13–64–302, C.R.S. (1996 Cum.Supp.), which limits noneconomic damages awards in tort actions brought against health care professionals to $250,000.

We perceive no distinction between the operative facts, legal issues, and public policies involved in *Scholz* and those at issue here that would lead us to reach a contrary conclusion. *Compare* §§ 13–64–102, C.R.S. (1996 Cum.Supp.) & 13–64–302 *with* § 13–21–102.5(1), C.R.S. (1987 Repl.Vol. 6A) & 13–21–102.5(3); *see also Goldberg v. Musim*, 162 Colo. 461, 427 P.2d 698 (1967)(Colorado con-

stitutional provision providing for access to the courts is mandate to judiciary rather than legislature). If any such distinction exists, it must be articulated by the supreme court.

The award of non-economic damages on the claims for negligence and premises liability is reversed and the cause is remanded for a new trial on those damages, with any resulting award subject to the limits set by § 13–21–102.5. The judgment against defendant on the claim for negligent infliction of emotional distress is also reversed. The judgment of liability against defendant on the claims for negligence and premises liability and the damage awards on those claims for economic losses and physical impairment are affirmed.

HUME and KAPELKE, JJ., concur.